IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| DAVID PATTERSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 3:10-cv-0464 |
| ) | Judge Campbell / Knowles |
| GERALD ANDERSON, ) | |
| ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Plaintiff's Motion for Summary Judgment. Docket No. 73. With the Motion, Plaintiff has filed a supporting Memorandum of Law[1] with Exhibits and a Statement of Undisputed Facts with Exhibits,[2] including: the original purchase contract (Ex. 1); the property parcel descriptions (Ex. 2, 7); Defendant's Deposition excerpts (Exs. 3, 4, 8); the original warranty deed conveying the real property (Ex. 5); an unsigned copy of a 1999 contract (Ex. 6); a 1999 "Extension Agreement" (Ex. 9); a 2000 "Extension Agreement" (Ex. 10); and a 2004 "Extension Agreement" (Ex. 11). Docket Nos. 74 - 75-11. Plaintiff has also

---

[1]While Plaintiff's Motion is headed "Motion for Summary Judgment," Plaintiff's supporting Memorandum is headed "Memorandum in Support of Motion for Partial Summary Judgment." Docket Nos. 73, 74. As will be discussed in greater detail below, the instant Motion is actually a Motion for Partial Summary Judgment as to one of the two Counts set forth in Plaintiff's Complaint.

[2]The Exhibits attached to the supporting Memorandum of Law and the Statement of Undisputed Facts are identical in content and numbering.

1

filed his Declaration with Exhibits.[3]  Docket No. 82.

Defendant, who is proceeding pro se, has not responded to Plaintiff's Motion or Statement of Undisputed Facts.

This is an action for breach of two contracts for the sale of real property in Williamson County, Tennessee.  *See* Docket No. 1.  Plaintiff also raises a fraud claim.  *Id.*  The first contract at issue was executed in 1997, and the second contract at issue is dated October 13, 1999.  *Id.*  Plaintiff argues that he had valid, enforceable contracts under which Defendant was required to purchase certain property, but that Defendant breached the contracts by failing to purchase the property, such that Plaintiff suffered monetary damages in the amount of $1,220,919.98.  Docket No. 74.

For the reasons discussed below, the undersigned recommends that Plaintiff's Motion for Summary Judgment be DENIED.

## II.  Facts

The following "facts" are set forth in Plaintiff's Declaration and Exhibits thereto.  The Court notes that many of these facts are not material to the issues before it and that some of them are not facts but are instead legal conclusions.  For example, some of Plaintiff's characterizations of what the contract may or may not provide are incorrect, at least to the extent that those statements are contradicted by the language of the contract itself.   Additionally, some of the statements that are not material are simply incorrect, particularly those characterizing the percentage increases of the sales prices in the contracts.

---

[3]The Exhibits attached to Plaintiff's Declaration are identical copies of 8 of the 11 Exhibits attached to Plaintiff's supporting Memorandum of Law and Statement of Undisputed Facts.

On July 9, 1997, Plaintiff and Defendant entered into a written contract ("1997 Contract") under which Plaintiff promised to sell, and, Plaintiff states, Defendant promised to buy, several tracts of real property, totaling 102.23 acres, in the planned Raintree Reserve development in Williamson County, Tennessee.[4] Docket No. 82, Declaration of David Patterson ("Plaintiff's Dec."), ¶ 2, *citing* Ex. 1, copy of the 1997 Contract. The body of the 1997 Contract states in full as follows:

PURCHASE CONTRACT

> WHEREAS David G. Patterson, Jr. ("Patterson") owns approximately 102 acres of land located in Williamson County, Tennessee, a description of which is attached hereto as Exhibit A (the "Property"); and
>
> WHEREAS Gerald Anderson ("Anderson") desires to contract to purchase said Property;
>
> THEREFORE, Patterson and Anderson agree as follows:
>
> 1. Patterson agrees to sell to Anderson the Property or portions of the same during the following periods at the following prices:
>
>> A. On or before 12 months from the date of execution of this contract:     $ <u>9,160.00 per acre</u>
>>
>> B. On or before the end of the next succeeding 12 months:            $<u>10, 435.00 per acre</u>
>>
>> C. On or before the end of the next succeeding 6 months:            $<u>11,237.00 per acre</u>
>
> Each conveyance shall be for no less than thirty-four (34) acres. During the term of this contract Patterson agrees to approve those changes to the OSRD which are approved by the City of

---

[4]The property descriptions of the tracts of land covered by the 1997 Contract are provided in Exhibit 2. Docket No. 82, Declaration of David Patterson ("Plaintiff's Dec."), ¶ 2.

> Brentwood.
>
> 2. The conveyance(s) shall be by general warranty deed. The Property shall be conveyed subject to the OSRD zoning requirements, the encumbrances listed on Exhibit B hereto and current property taxes, which taxes shall be paid by Anderson.

Docket No. 82-1.

The 1997 Contract was signed by both parties, but it is undated. There is a typed date on the lower left corner of the document of "6/27/97."[5] *Id.* Subsequent extensions of this agreement refer to the Contract as being dated July 9, 1997. Docket No. 82.

According to Plaintiff's Declaration, the 1997 Contract required Defendant to close on the purchase of the property not later than January 9, 2000. *Id.*, ¶ 3. The purchase price under the 1997 Contract was $9,160.00 per acre if the property was purchased on or before twelve months from the execution of the contract (*i.e.*, July 9, 1998); $10,435.00 per acre if the property was purchased in the following twelve months (*i.e.,* July 9, 1999); and $11,237.00 per acre if the property was purchased on or before the end of the next succeeding six months (*i.e.*, January 9, 2000). *Id.* According to Plaintiff, the 1997 Contract provides that the price of the property shall increase by fourteen and one-half percent at the expiration of each of the first two twelve-month periods from the date of execution of the contract, and seven and one-quarter percent for each six-month period thereafter.[6] *Id.*

---

[5]At one point in his Memorandum, Plaintiff refers to "the Second 1997 Contract." *See, e.g.,* Docket No. 74, p. 3. Plaintiff never identifies a "Second 1997 Contract," and there is no such document in the record as far as the Court can tell.

[6]Some of Plaintiff's statements in this sentence are simply incorrect. The increase in the price of the property between the original purchase amount ($9,160.00) and the price after the first twelve months ($10,435.00) is $1275, which is not a 14.5 percent increase. Moreover, while there are "two twelve month periods from the date of execution of the contract," the price

4

In 1999, Defendant proposed an exchange of property and a further extension in lieu of closing on the 1997 Contract ("1999 Exchange"). *Id.*, ¶ 4. Defendant wanted to develop some of the tracts of land, but did not have the money to purchase the property outright, so he proposed that he would exchange a 36.74 acre parcel of property that he owned in Raintree ("1999 Tract") for 29.52 acres of the property subject to the 1997 Contract. *Id.* Under the terms of the proposed deal, Defendant would agree to purchase the 1999 Tract at a per acre price that was based upon the price in the 1997 Contract, adjusted for the larger acreage in the 1999 Tract, with fourteen and one-half percent increases in the per acre price for each year that he did not purchase the property. *Id.* Also under the terms of the proposed deal, Defendant would remain obligated to purchase the remaining land under the 1997 Contract, but Plaintiff agreed to extend the closing deadline, with a corresponding price increase. *Id.* Plaintiff relied upon Defendant's promise to purchase the 1999 Tract, and accepted Defendant's proposal. *Id.*, ¶ 5.

In accordance with the agreement, Plaintiff, in April and October 1999, conveyed to Defendant's mother the property being exchanged for the 1999 Tract. *Id.*, ¶ 6. The property being exchanged consisted of 29.52 acres. *Id.* Plaintiff conveyed the property to Defendant's mother because that is what he was instructed to do by "the lawyers." *Id.*, ¶ 7. In exchange for the property that Plaintiff conveyed to Defendant's mother, Defendant conveyed the 1999 Tract to Plaintiff. *Id.*, ¶ 8, *referencing* Ex. 3, Warranty Deed containing the property description for the 1999 Tract. As the final step in the 1999 Exchange, on or about October 13, 1999, Plaintiff and Defendant entered into a contract under which, Plaintiff says, Defendant agreed to purchase

---

of the property increases approximately 13.9 percent only at the expiration of the first twelve month period. The price increases approximately 7.6 percent after the next six month period, and there is only one six month period set out in the contract.

the 1999 Tract on or before January 9, 2001 ("1999 Contract"). *Id.*, ¶ 9, *referencing* Ex. 4, an unsigned copy of the 1999 Contract.

Plaintiff, in his Declaration, states: "I cannot locate an executed version of the 1999 Contract at this time, although I recall that both parties signed the contract attached as <u>Exhibit 4</u>." *Id.*, (underlining in original). The purchase price for the 1999 Tract was $9,073 per acre. *Id.* At the conclusion of the 1999 Exchange, Plaintiff owned five separate parcels of property in the Raintree development that were subject to the purchase agreement between Plaintiff and Defendant. *Id.*, ¶ 10, *referencing* Ex. 5, the property descriptions of said parcels. All but the 1999 Tract are subject to the terms of the 1997 Contract. *Id.* The 1999 Tract is subject to the 1999 Contract. *Id.* The remaining property from the 1997 Contract consists of 72.71 acres, and the 1999 Tract is 36.74 acres. *Id.*

The body of the 1999 Contract states in full as follows:

PURCHASE CONTRACT

> WHEREAS David G. Patterson, Jr. ("Patterson") owns approximately 36.74 acres of land located in Williamson County, Tennessee, a description of which is attached hereto as Exhibit A (the "Property"); and
>
> WHEREAS Gerald Anderson ("Anderson") desires to contract to purchase said Property;
>
> THEREFORE, Patterson and Anderson agree as follows:
>
> 1. Patterson agrees to sell to Anderson the Property on or before January 9, 2000 for $9,073.00 per acre.
>
> Said conveyance shall be for no less than the entire Property. During the term of this Contract Patterson agrees to approve those changes to the OSRD which are approved by the City of Brentwood.

> 2. The conveyance(s) shall be by general warranty deed. The Property shall be conveyed subject to the OSRD zoning requirements, the encumbrances listed on Exhibit B hereto and all property taxes, which taxes shall be paid by Anderson.

Docket No. 82-4.

On the same date of the 1999 Contract, Plaintiff and Defendant executed an amendment and extension of the 1997 Contract, extending the closing date to January 9, 2001 and raising the purchase price by fourteen and one-half percent. *Id.*, ¶ 11. The closing for the 1999 Contract was also extended to January 9, 2001, and the purchase price was increased by fourteen and one-half percent. *Id.* Defendant remained obligated under the 1997 Contract to purchase the remaining property under that Contract. *Id.*, *referencing* Ex. 6, the 1999 Extension Agreement.

In 2000, Defendant asked for an extension of the closing for the 1999 Contract, and Plaintiff agreed. *Id.*, ¶ 12. On December 28, 2000, Plaintiff and Defendant executed an amendment and extension of both the 1997 Contract and the 1999 Contract, extending the closing dates to on or before January 9, 2002, and raising the price of the Property. *Id.*, *referencing* Ex. 7, the 2000 Extension Agreement.

Plaintiff and Defendant executed Extension Agreements extending the closing dates by one year in 2001, 2002, 2003, and 2004. *Id.*, ¶ 13. Each Extension Agreement extended the closing date by one year and increased the per acre purchase price. *Id.*

On January 9, 2004, Plaintiff and Defendant executed the last written Extension Agreement. *Id., referencing* Ex. 8, the 2004 Extension Agreement. The 2004 Extension Agreement once again extended the closing date by one year and increased the per acre purchase price. *Id.* In the 2004 Extension Agreement, the per acre purchase price under the 1997 Contract was $22,224.50, and the per acre purchase price under the 1999 Contract was

7

$17,856.16. *Id.* The closing date under the 2004 Extension Agreement was extended to on or before January 9, 2005. *Id.*

After the 2004 Extension Agreement was signed, no further extensions were written. *Id.*, ¶ 15. Plaintiff, however, communicated with Defendant through attorney Peter Curry. *Id.* Mr. Curry informed Plaintiff that Defendant wanted to extend the closings on the same terms. *Id.* Plaintiff agreed to extend the closings. *Id.* The last time Plaintiff agreed to extend the closings was 2007, which, according to Plaintiff, meant that the new closing date would have been January 9, 2008. *Id.* Later in 2007, Plaintiff advised Defendant, through Mr. Curry, that he could not extend any longer without a purchase of at least some of the property or some collateral to secure Defendant's performance. *Id.* Defendant was willing to do neither. *Id.*

The per acre purchase price as of January 9, 2008 was $33,361.71 for the property remaining from the 1997 Contract and $26,804.28 for the 1999 Tract. *Id.*, ¶ 16. The total purchase price for the 72.71 acres in the remaining property from the 1997 Contract as of January 9, 2008 was $2,425,729.93. *Id.* The total purchase price for the 36.74 acre 1999 Tract was $984,789.25. *Id.* Accordingly, the total price for all the property subject to the contracts was $3,410.519.18. *Id.*

Plaintiff was ready, willing, and able to close on the purchase of the properties at any point after he first obtained them in 1997. *Id.*, ¶ 17. Defendant, however, never closed, and there were no further extensions after January 2007. *Id.* Plaintiff states that he never understood the 1997 Contract or the 1999 Contract to be anything other than contracts obligating Defendant to purchase the property, as it would have made no financial sense for him to agree to only an option to purchase the property and he would never have agreed to such a transaction. *Id.*, ¶ 18.

8

The remaining property that Defendant owns and the remaining property titled in Plaintiff's name are both contained within The Reserve at Raintree Forest subdivision approved by the Brentwood Planning Commission. *Id.*, ¶ 19. The first three sections have been developed. *Id.* The Brentwood Planning Commission requires that all property owners of a subdivision (in this case, Plaintiff and Defendant) sign off and approve any additional section approvals. *Id.* The value of Plaintiff's property is substantially based on being part of the larger subdivision development. *Id.* The value of the property is highly dependent on whether the property may be developed into residential subdivisions and sold off as individual lots. *Id.* Because Defendant's signature will be required for development, the property has substantially less value that it would otherwise have. *Id.* Plaintiff's property does not have road, water, or sewer access. *Id.* Based on the location of Plaintiff's property, "the easiest way to obtain road/sewer access" is through undeveloped property owned by Defendant or his mother. *Id.* Because of these reasons, any purchaser of the property for development purposes is "to a large extent likely to be at the mercy" of Defendant, "who has a reputation for making erratic business decisions." *Id.* Given the "substantial problems" associated with developing the property, Plaintiff would have "substantial difficulty" in finding a buyer for his property, standing alone, if he "could find one at all." *Id.,* ¶ 20. Plaintiff estimates that, in January 2008, the fair market value of his property, standing alone, was $20,000 per acre. *Id.*

### III. Analysis

**A. Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material

> not later than fourteen (14) days after service of the motion,
> except, that in cases of a motion for summary judgment, that time
> shall be twenty-one (21) days after the service of the motion,
> unless otherwise ordered by the Court. Failure to file a timely
> response shall indicate that there is no opposition to the motion.

Plaintiff filed the pending Motion on September 30, 2011. Docket No. 73. Defendant has failed to respond to Plaintiff's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the
> motion for summary judgment must respond to each fact set forth
> by the movant by either (I) agreeing that the fact is undisputed; (ii)
> agreeing that the fact is undisputed for the purpose of ruling on the
> motion for summary judgment only; or (iii) demonstrating that the
> fact is disputed. Each disputed fact must be supported by a citation
> to the record. ...
>                                . . .
> **g. Failure to Respond.** Failure to respond to a moving party's
> statement of material facts, or a non-moving party's statement of
> additional facts, within the time periods provided by these Rules
> shall indicate that the asserted facts are not disputed for the
> purposes of summary judgment.

Defendant has likewise failed to respond to Plaintiff's Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Defendant's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Plaintiff is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Plaintiff's Motion solely on the ground that Defendant has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir.

1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Plaintiff has met his burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise,

must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. The Case at Bar**

In his Complaint, Plaintiff raises two substantive claims against Defendant. First, Plaintiff claims that Defendant breached the 1997 and 1999 contracts by refusing to purchase the real property that he was obligated to purchase under the contracts. Docket No. 1, p. 6. Second, Plaintiff argues that Defendant obtained the property conveyed to him in 1999 by means of a promise to purchase Tract F that he never intended to keep, and that Defendant, therefore, obtained that property by improper or fraudulent means. Docket No. 1, p. 6.

The instant Motion for Summary Judgment seeks a judgment only as to Plaintiff's claims for breach of contract. Docket No. 73. As Plaintiff's Motion states in relevant part:

> Specifically, Plaintiff moves the Court to rule as follows:
>
> (1) That there were valid and binding contracts requiring Defendant to purchase from Plaintiff certain real property, the description of which is attached hereto as Exhibit 1 on or before January 9, 2008;
>
> (2) Defendant breached the contracts by failing to purchase the property; and

> (3) As a result of Defendant's breach, plaintiff has suffered monetary damages in the amount of $1,220,919.98, plus pre-judgment interest.

*Id*., p. 1.

As discussed above, there are two documents headed "PURCHASE CONTRACT." Docket Nos. 82-1, 82-4. The copy of the 1999 Contract that has been filed by Plaintiff, however, is not signed by either party. Docket No. 82-4.

There are also three extension agreements, which essentially extend the closing dates in both Contracts and revise the prices set forth in both Contracts. Docket Nos. 82-6, 82-7, 82-8. The extension agreements do not otherwise substantively change the provisions of either the 1997 Contract or the 1999 Contract.

> As the Tennessee Courts have stated:
>
> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. . . . If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. . . . In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken from its "plain, ordinary, and popular sense." . . . The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. . . . The entire written agreement must be considered.

*Cameron General Contractors, Inc. v. Kingston Pike LLC*, 2011 WL 6740558 at *2-3 (Tenn. Ct. App.) (citations omitted).

The starting point for determining the intention of the parties is the language of the contract itself. *Petty v. Sloan,* 277 S.W. 2d 355 (Tenn. 1955). When the terms of a written instrument are unambiguous, the interpretation of the contract is a matter of law for the Court, and it is the Court's duty to enforce the contract according to its plain terms. *Whitehaven*

*Community Baptist Church v. Holloway,* 973 S.W.2d 592 (Tenn. 1998) (party's claim that it misunderstood the nature of the documents it signed could not override the unambiguous nature of the documents). Where the clear contract language reveals the intent of the parties, there is no need to apply the rules of construction. *Id*.

With regard to the 1997 Contract, the only possible ambiguity in the contract is the heading "PURCHASE CONTRACT." But even though the 1997 Contract is headed "PURCHASE CONTRACT," and even though Plaintiff characterizes it as a contract for the sale of property, the plain language of the Contract shows that it is clearly neither. Simply put, there is no language in the 1997 Contract that obligates Defendant Anderson to do anything. The only obligation created in the Contract is Plaintiff's obligation to sell the property or portions thereof to Defendant during certain periods of time at certain prices.

Thus, the 1997 Contract is nothing more than an Option Contract. As the Tennessee Court of Appeals has stated, "[t]he obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy [is what is termed, in law, an 'option,' which is] simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time." *City of Lebanon v. Baird,* 1987 WL 12988 at *5 (Tenn. Ct. App.), *rev'd on other grounds,* 756 S.W. 2d 236 (Tenn. 1988), *quoting Black v. Maddox,* 104 Ga 157, 30 S.E. 2d 723, 724. (1898).[7]

---

[7]The above quote from *Baird* is essentially a corrected quote from *Black*. The *Baird* Court, in attempting to use the *Black* quote as it did, inadvertently misquoted *Black*.

Additionally, the question whether the option contract is, in fact, a valid option contract is not before the Court.

Moreover, the 1997 Contract states in part, "Gerald Anderson ("Anderson") *desires* to contract to purchase said Property . . . ." (Emphasis added.) That language reflects nothing more than Mr. Anderson's desire to purchase the Property (or "portions of the same"), which he could do if he chose to exercise his option under the Contract. Tellingly, the language does not state that Mr. Anderson is actually agreeing or promising to purchase the Property in the instrument at issue.

Furthermore, as discussed above, the 1997 Contract states in part, "Patterson agrees to sell Anderson the Property *or portions of the same* during the following periods at the following prices . . . ." Docket No. 82-1 (emphasis added). The description of the Property attached to the 1997 Contract as Exhibit A is actually five separate descriptions of different properties. Docket No. 82-2, p. 1-3. Under the terms of the 1997 Contract, Defendant Anderson could purchase "the Property" or any "portions of" the Property (as long as each conveyance was for no less than 34 acres). This language further indicates to the Court that the 1997 Contract is an Option Contract, not a sales Contract. It would make no sense to construe the 1997 Contract as a sales Contract, as it would likely be unenforceable because there is no definite description of the Property that Defendant, under Plaintiff's theory, was obligated to purchase. This provision, however, makes perfect sense if the Contract is construed as an Option Contract, under which Defendant has the option to purchase either the entire Property or a portion of it.

Finally, the fact that the contract at issue is headed "PURCHASE CONTRACT" is of little import. As the Tennessee Supreme Court has stated, "The proper construction of a

contractual document is not dependent on any name given to the instrument by the parties, or on any single provision of it, but upon the entire body of the contract and the legal effect of it as a whole." *Aetna Casualty & Surety Co. v. Woods,* 565 S.W.2d 861, 864 (Tenn. 1978), *citing Arbuckle v. Kirkpatrick,* 98 Tenn. 221, 39 S.W. 3 (1897). In *Arbuckle*, the Court determined that a contract which was headed "Special Selling Factor Appointment," was not a contract appointing a sales agent, but rather was a sales contract. Additionally, in *Baird, supra*, the Court determined that a document that was labeled "an option agreement," was actually a contract for sale. 1987 WL 12998 (Tenn. Ct. App.), *5.

For the foregoing reasons, Defendant did not breach the 1997 Contract, and Plaintiff cannot recover under that Contract.

Plaintiff's claims based on the 1999 Contract can be summarily addressed. Like the 1997 Contract, the 1999 Contract is simply an Option Contract. It does not obligate Defendant to do anything.

Additionally, the Tennessee statute of frauds, T.C.A. § 29-2-101, requires that a contract for the sale of land be in writing "and signed by the party to be charged therewith . . . . " Moreover, the statute states, "In a contract for the sale of land . . . the party to be charged is the party against whom enforcement of the contract is sought." While Option Contracts for the sale of land are not specifically discussed in Section 29-2-101, the Tennessee Courts have held that the statute of frauds encompasses Option Contracts for the sale of land. *See Texas Co. v. Aycock,* 227 S.W.2d 41, 43-54 (Tenn. 1950); *Anderson v. Hacks Crossing Partners*, 3 S.W. 3d 482 Tenn. Ct. App. 1999; *GRW Enters., Inc., v. Davis*, 797 S.W.2 606, 612 n.6 (Tenn. Ct. App. 1990) As discussed above, Plaintiff states that he has been unable to locate a signed copy of the 1999

16

Contract. Thus, Plaintiff's claims on the 1999 Contract would be barred by the statute of frauds whether the 1999 Contract was a sales Contract or an Option Contract.

Therefore, Plaintiff cannot recover under the 1999 Contract.

### IV. Conclusion

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion for Summary Judgment be DENIED. While Defendant Anderson has not sought Summary Judgment on Plaintiff's breach of contract claim, the above discussion compels the conclusion that Plaintiff cannot recover on either of the alleged sales contracts between the parties. For that reason, the undersigned further recommends that Plaintiff's breach of contract claims against Defendant Anderson be DISMISSED.[8]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

---

[8] Plaintiff's claim for fraud, however, remains.