IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID PATTERSON | ) |
| | ) |
| v. | ) NO. 3-10-0464 |
| | ) JUDGE CAMPBELL |
| GERALD ANDERSON | ) |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action arises from two contracts for the sale of real property in Williamson County, Tennessee, in a development known as Raintree Forest, and Defendant's alleged breaches of those agreements. The Court found that there were genuine issues of material fact which precluded summary judgment (Docket No. 151) and held a bench trial of this matter on April 2, April 3 and April 23, 2013. *See* Transcript, Docket No. 176. The parties have submitted proposed Findings of Fact and Conclusions of Law (Docket Nos.182 and 183). For the reasons stated herein, the Court shall enter judgment for the Plaintiff in the amount of $ 3,136,661.49**.**

FACTS

This is a breach of contract case between David Patterson, Plaintiff, and Gerald Anderson, Defendant. The primary issue is whether certain contracts are repurchase agreements, as Patterson contends, or option contracts, as Anderson contends.

In the mid-1990s, Defendant was involved in developing an area of Williamson County known as Raintree Forest. Peter Curry, who acted as attorney for both Plaintiff and Defendant at various times, testified that, in 1997, Defendant told Curry that he was looking for capital for this development. Curry told Defendant that he had a client who might be interested in providing Defendant the capital he needed. The client of whom Curry was speaking was Plaintiff. Transcript ("T"), pp. 60-61.

Curry testified that Plaintiff wanted to structure any transaction to create a Section 1031 exchange for tax purposes. T at 63. Plaintiff testified that his purpose in the transaction was to receive an "attractive rate of return" on his investment. T. at 227. Mr. Morrison, Defendant's attorney, testified that his objective was to acquire all the property at Raintree Forest under one ownership so that a comprehensive plan of development could be established. Morrison also stated that Defendant, throughout this time, attempted to comprehensively plan the entire development. T at 267-68.

Plaintiff and Defendant never met or spoke to each other. T at 63. Both Plaintiff and Defendant were sophisticated businessmen. Both Plaintiff and Defendant authorized Mr. Curry to convey proposed terms, offers, and acceptances to each other with regard to this 1997 transaction. T at 64.

Mr. Curry testified that Plaintiff and Defendant agreed that Plaintiff would provide Defendant with capital of $816,000 with an agreed-upon return of 14.5% annually. T at 66 and 68. Curry also stated that to take advantage of the 1031 tax exchange opportunity, the transaction was structured as a land purchase/repurchase. T at 66. According to the testimony of both Curry and Plaintiff, Defendant agreed to sell Plaintiff approximately 102 acres of undeveloped property and agreed to buy the property back over the following thirty months. T at 68-69, 224-25.

Plaintiff testified that Defendant proposed the 14.5% rate, the sales price, and the number of acres to be purchased. T at 225-26. It is undisputed that neither Plaintiff nor Defendant could develop the 102 acres without the cooperation of the other because of the location of the property. T at 83, 195-96.

Curry drafted three documents to effect this transaction. The first was a Real Estate Sales Contract (Ex. 3), in which Defendant agreed to sell to Plaintiff 102 acres in the Raintree development. The second was a warranty deed conveying those 102 acres from Defendant to Plaintiff (Ex. 4). The third, one of the documents at issue herein, was a "Purchase Contract" (Ex. 5), in which Plaintiff agreed to sell to Defendant the 102 acres, at regular intervals for specific prices.

The 1997 Purchase Contract provided:

> WHEREAS, David G. Patterson, Jr. ("Patterson") owns approximately 102 acres of land located in Williamson County, Tennessee, a description of which is attached hereto as Exhibit A ("the Property"); and
>
> WHEREAS Gerald Anderson ("Anderson") desires to contract to purchase said Property;
>
> THEREFORE, Patterson and Anderson agree as follows:
>
> 1. Patterson agrees to sell to Anderson the Property or portions of the same during the following periods at the following prices.
>> A. On or before 12 months from the date of execution of this contract: $9,160.00 per acre
>>
>> B. On or before the end of the next succeeding 12 months: $10,435.00 per acre
>>
>> C. On or before the end of the next succeeding 6 months: $11,237.00 per acre
>
> Each conveyance shall be for no less than thirty-four (34) acres. During the terms of this Contract Patterson agrees to approve those changes to the OSRD which are approved by the City of Brentwood.
>
> 2. The conveyance(s) shall be by general warranty deed. The Property shall be conveyed subject to the OSRD zoning requirements, the encumbrances listed on Exhibit B hereto and current property taxes, which taxes shall be paid by Anderson.

Ex. 5.

Neither the Real Estate Sales Contract (Ex. 3) nor the Purchase Contract (Ex. 5) expressly states that the purchaser "shall buy" the real estate.

Curry testified that no one ever asked him to make this contract an Option Contract: "[I]t wasn't an option. It was a contract to purchase. It says Contract to Purchase. Doesn't say Option to Purchase." T at 193. Curry stated that there was no doubt in his mind that Defendant agreed to be bound to buy the property back from Plaintiff, and that neither party said anything about an option during the negotiations. T at 67-68. Plaintiff testified that he agreed completely with Mr. Curry's testimony regarding this transaction. Plaintiff testified that the word "option" never came into play during these negotiations. T at 225. He testified that Curry explained to him that Defendant had agreed to enter into a binding purchase contract with respect to the 102 acres. T at 224.

Later, in 1999, Defendant needed part of the 102 acres for development. Defendant proposed a swap of land whereby Plaintiff would convey three parcels to Defendant's mother and then Defendant would convey 36 acres to Plaintiff under the same type agreement as the 1997 transaction. T at 84, 91-92, 291-92. Mr. Curry testified that Defendant told him it would be the same arrangement, where Defendant would agree to buy it back at a certain price per acre over a certain time period once again. T at 88.

Defendant's lawyer, Mr. Morrison, drafted the documents whereby Plaintiff sold three parcels to Defendant's mother, Iona Anderson (Ex. 9) and whereby Defendant conveyed the 36 acres to Plaintiff (Ex. 8). The only document Mr. Curry drafted with regard to this "swap" was a Purchase Contract similar to the first Purchase Contract, whereby Defendant would repurchase the 36 acres from Plaintiff. T at 91-93 and Ex. 7.

4

The 1999 Purchase Contract provided:

> WHEREAS, David G. Patterson, Jr. ("Patterson") owns approximately 36.74 acres of land located in Williamson County, Tennessee, a description of which is attached hereto as Exhibit A (the "Property"); and
>
> WHEREAS, Gerald Anderson ("Anderson") desires to contract to purchase said property;
>
> THEREFORE, Patterson and Anderson agree as follows:
>
> 1. Patterson agrees to sell to Anderson the Property on or before January 9, 2000 for $9,073.00 per acre.
>
> Said conveyance shall be for no less than the entire Property. During the term of this Contract Patterson agrees to approve those changes to the OSRD which are approved by the City of Brentwood.
>
> 2. The conveyance(s) shall be by general warranty deed. The Property shall be conveyed subject to the OSRD zoning requirements, the encumbrances listed on Exhibit B hereto and all property taxes, which taxes shall be paid by Anderson.
>
> SELLER:                                        BUYER:
>
> _____ 10/13/99        _____ 10/13/99
> David G. Patterson, Jr.   DATE         Gerald Anderson         DATE

Ex. 7. Again, neither the Real Estate Sales Contract (Ex. 9) nor the Purchase Contract (Ex. 7) expressly states that the purchaser "shall buy" the real estate.

Over the years, Defendant requested and Plaintiff granted several extensions of the times to repurchase the land, with corresponding increases in the purchase price. T at 98-102, Exs. 11-14.

Subsequent to these transactions, Defendant was indicted, convicted and incarcerated for bribing a government official. T at 106 and 198. During his incarceration, the repurchase agreements were extended. T at 106-111, Ex. 24-25. The last extension, in late 2006, had a closing date of January 9, 2008. T at 109. Thereafter, Plaintiff would not agree to any further extensions. T at 110.

Defendant did not repurchase the property on January 9, 2008, and Plaintiff subsequently filed this lawsuit. T at 111; *see also* Ex. 33.

Plaintiff seeks damages of more than $ 3 million. Plaintiff testified that the contract purchase price on the final extended closing date (January 9, 2008) was $3,896,260.20 (T at 229). That number was not challenged by Defendant. Plaintiff's expert testified that the fair market value of the property on January 9, 2008, was $1,860,000.00. Ex. 40 and T at 206.

Defendant did not appear at trial because of health issues. Defendant's testimony was presented by deposition. Defendant testified in deposition that he offered to sell the property to Plaintiff in return for an option to buy it back in something like three years. Docket No. 125-2 (Anderson Dep), p. 23. Defendant testified that the 1999 "swap" transaction was Mr. Curry's idea, not his. *Id*. at 46. Defendant did not understand the "swap" between Plaintiff and Defendant's mother. *Id*. at 48-49, 51-52. Defendant testified that he and Curry never discussed extending what he called the "option contract." *Id*. at 73. Yet Defendant's letters to Curry reflect a request for such an extension. T at Exs. 24 and 25.

The Court finds the testimony of Plaintiff and Mr. Curry to be more credible than that of Defendant. Consequently, any statements by attorneys Morrison and Salomon which were based upon Defendant's statements to them likewise lack credibility. The testimony of Plaintiff and Mr. Curry was more clear, more consistent, and therefore carries more weight with the Court on the issues in this dispute. Defendant's testimony also has less credibility because of his conviction for bribing a government official, which is a crime involving dishonesty. Fed. R. Evid. 609 and 403.

CONCLUSIONS OF LAW

In this diversity action, Tennessee substantive law controls. *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F.Supp.1273, 1277 (M.D. Tenn. 1990). In Tennessee, a party can prove a breach of contract by showing: (1) the existence of a contract; (2) breach of the contract; and (3) damages flowing from the breach. *Life Care Centers of America, Inc. v. Charles Town Associates. Ltd. Partnership*, 79 F.3d 496, 514 (6th Cir. 1996).

Before the Court can determine whether there were breaches of these agreements, it must determine what the agreements were. Having previously determined that these contracts were ambiguous, the Court must ascertain the parties' intention and give effect to that intention, consistent with legal principles. *Hamblen County v. City of Morristown,* 656 S.W.2d 331, 333 (Tenn. 1983); *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009). Where the language of a contract is ambiguous, the intention of the parties is discerned not alone from the language of the contract, but also from the surrounding facts and circumstances. *Lubber, Inc. v. Optari LLC*, 2013 WL 1245679 at * 6 (M.D. Tenn. March 26, 2013). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Cummings* at 333.

Defendant argues that there was no meeting of the minds with regard to the 1997 purchase contract and, therefore, it is unenforceable. He contends that the Purchase Contract contained no expressed obligation to purchase, which is true. But neither did the 1997 Real Estate Sales Contract by which Defendant sold the 102 acres to Plaintiff contain such an expressed obligation to purchase, and Defendant does not contend that that contract is unenforceable.

Defendant presented evidence that, in the past, he had structured real estate deals with options to purchase and argued that he intended this transaction to be like those. The Court

considered such evidence solely for context and specifically not as propensity evidence that "he did it before, so he must have done it again." T at 260. *See* Fed. R. Evid. 403, 404(b) and 406.

Defendant argues that the 1999 Purchase Contract was never executed. Mr. Curry testified that it was executed (T at 93-94), and Defendant testified that it was not (Docket No. 125-2, pp. 58 and 62). The Court finds the testimony of Mr. Curry to be more credible.

These two agreements were called "Purchase Contracts." The term "option" does not appear in the documents. None of the language typically used to create an option is included. In fact, these contracts are just like the parties' corresponding Real Estate Sales Contracts in that they contain no specific obligation for the buyer to buy anything. In both documents, Defendant retains the obligation to pay property taxes on the property. Exs. 5 and 7.

The Court finds that the parties, at the time of the execution of these contracts, intended the "Purchase Contracts" to be just that, purchase contracts. The Court finds that these documents are not option contracts, but rather absolute obligations of Defendant to re-purchase the property previously conveyed to the Plaintiff at the prices and with the interest rates provided in the contracts.

Having found that the contracts are purchase agreements, there is no dispute that Defendant breached the agreements. Defendant did not re-purchase this property after all the extensions of time agreed to by Plaintiff. Moreover, Plaintiff has been injured by Defendant's breaches. The property, as testified to by numerous witnesses, is land-locked and worth substantially less than it would be as part of the larger tract. The value of the land, as testified to by Plaintiff's expert, actually decreased after Plaintiff purchased it from Defendant.

For these reasons, the Court finds that Plaintiff is entitled to damages of $3,136,661.49, which represents the difference in what the contract purchase price would have been on January 9,

2008 ($3,890,260.20) and the fair market value of the property on that same date ($1,860,000.00), plus statutory interest (10%) since January 9, 2008 (which amounts to $557.73 per diem). *See* Docket No. 184-1.

Plaintiff's Motion To Strike Certain Arguments in Defendant's Proposed Findings of Fact and Conclusions of Law (Docket No. 185) is moot. In any event, the Court finds the arguments which Plaintiff moves to strike are without merit. Whether Plaintiff's transactions qualified for Section 1031 treatment is a decision for the Internal Revenue Service.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE